## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Civil Action No. 4:24-CV-02001 |
| | ) | |
| CONVERGEONE HOLDINGS, INC., *et al.*,[1] | ) | Bankruptcy Case No. 24-90194 (CML) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Ad Hoc Group of Excluded Lenders, | ) | |
| | ) | |
| *Appellant.* | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| ConvergeOne Holdings, Inc., *et al.*, | ) | |
| | ) | |
| *Appellees.* | ) | |
| | ) | |

**APPELLEE DEBTORS' RESPONSE IN OPPOSITION TO THE MINORITY AD HOC GROUP'S EMERGENCY MOTION FOR A STAY PENDING APPEAL, AN INTERIM STAY, AND CERTIFICATION TO THE COURT OF APPEALS**

---

[1] The Debtors in the chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: AAA Network Solutions, Inc. (7602); ConvergeOne Dedicated Services, LLC (3323); ConvergeOne Government Solutions, LLC (7538); ConvergeOne Holdings, Inc. (9427); ConvergeOne Managed Services, LLC (6277); ConvergeOne Systems Integration, Inc. (9098); ConvergeOne Technology Utilities, Inc. (6466); ConvergeOne Texas, LLC (5063); ConvergeOne Unified Technology Solutions, Inc. (2412); ConvergeOne, Inc. (3228); Integration Partners Corporation (7289); NetSource Communications Inc. (6228); NuAge Experts LLC (8150); Providea Conferencing, LLC (7448); PVKG Intermediate Holdings Inc. (4875); Silent IT, LLC (7730); and WrightCore, Inc. (3654). The Debtors' mailing address is 10900 Nesbitt Avenue South, Bloomington, Minnesota 55437.

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 3

    A.    The Restructuring Support Agreement and Plan of Reorganization ............................. 3

    B.    The Minority AHG's Alternative Proposals and Plan Objection .................................. 5

    C.    The Confirmation Hearing and Appeal ........................................................................ 6

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ........................................................................................................................ 7

I.    The Minority AHG's Failure to Seek Relief in the Bankruptcy Court Compels Denial ......... 7

II.    There Is No Basis for a Stay Pending Appeal ................................................................. 10

    A.    The Minority AHG is Unlikely to Succeed on the Merits ........................................... 10

        i.    The Minority AHG Must Demonstrate *Likelihood* of Success on the Merits, Not Merely a *Substantial Possibility* ......................................................................... 10

        ii.    The Plan Provides Identical Treatment for Prepetition Claims ................................... 10

        iii.  *LaSalle* Does Not Provide a Framework for Review ................................................ 12

    B.    The Minority AHG Concedes That it is Not Irreparably Harmed Absent Relief .......... 14

    C.    The Balance of Harms Tips Decidedly to the Debtors .................................................. 15

    D.    A Stay of the Confirmation Order Would Not Serve the Public Interest ....................... 16

III.    There is No Basis for Certification to the Court of Appeals ............................................. 16

CONCLUSION ..................................................................................................................... 18

AMERICAS 127080279

# **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

*Ad Hoc Comm. of Non-Consenting Creditors v. Peabody Energy Corp. (In re Peabody Energy Corp.)*,
    933 F.3d 918 (8th Cir. 2019) ...................................................................................... 10, 17

*In re Adelphia Commc'ns Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ......................................................................... 10, 16

*All. for Hippocratic Med. v. Food & Drug Admin.*,
    No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) ................................................. 7

*Am. Multi-Cinema, Inc. v. Nat'l CineMedia, LLC (In re Nat'l CineMedia, LLC)*,
    No. 4:23-CV-02414; 2023 U.S. Dist. LEXIS 139189 (S.D. Tex. Aug. 4, 2023) ............... 14

*In re America-CV Station Group, Inc.*,
    56 F.4th 1302 (11th Cir. 2023) ......................................................................................... 13

*Arnold v. Garlock Inc.*,
    278 F.3d 426 (5th Cir. 2001) .............................................................................................. 7

*Balke v. Carmichael*,
    No. H-18-731, 2019 U.S. Dist. LEXIS 131276 (S.D. Tex. Aug. 6, 2019) ........................... 9

*Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*,
    526 U.S. 434 (1999) .............................................................................................. 12, 13, 14

*Barber v. Bryant*,
    833 F.3d 510 (5th Cir. 2016) .............................................................................................. 7

*Belcher v. Birmingham Trust Nat'l Bank*,
    395 F.2d 685 (5th Cir. 1968) .............................................................................................. 7

*In re BGI, Inc.*,
    504 B.R. 754 (S.D.N.Y. 2014) ........................................................................................... 8

*In re CHC Group Ltd.,  (BJH)*,
    No. 16-31854 (BJH), 2017 WL 11093971 (Bankr. N.D. Tex. Mar. 3, 2017) ..................... 11

iii

*Citadel Equity Fund Ltd. v. Serta Simmons Bedding, LLC, (In re Serta Simmons Bedding, LLC)*,
No. 4:23-cv-2173, 2023 U.S. Dist. LEXIS 112705 (2023) ...................................... 7, 10, 14

*Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
762 F.2d 464 (5th Cir. 1985) ........................................................................................ 14

*In re Fiesta Inn & Suites, LP*,
No. 09-51355-C, 2009 WL 5195961 (Bankr. W.D. Tex. Dec. 21, 2009) ........................... 7

*In re First S. Sav. Ass'n*,
820 F.2d 700 (5th Cir. 1987) ....................................................................................... 10

*Glassel v. Seamless Operating Grp., LLC*,
No. H-13-1158, 2013 U.S. Dist. LEXIS 193394 (S.D. Tex. June 6, 2013) ......................... 8

*In re Herrera*,
No. 09-52974-C, 2010 WL 148182 (Bankr. W.D. Tex. Jan. 8, 2010) .............................. 15

*In re Joint E. & S. Dist. Asbestos Litig.*,
982 F.2d 721 (2d Cir. 1992) ......................................................................................... 11

*In re LATAM Airlines Group S.A., (JLG)*,
No. 20-11254 (JLG), 2022 WL 2206829 (Bankr. S.D.N.Y. June 18, 2022) ...................... 11

*In re Motors Liquidation Co.*,
539 B.R. 676 (Bankr. S.D.N.Y. 2015) ............................................................................ 16

*Org v. Callanen*,
39 F.4th 297 (5th Cir. 2022) .......................................................................................... 7

*In re Sanchez Energy Corp.*,
No. 19-34508, 2024 WL 1926222 (Bankr. S.D. Tex. Apr. 30, 2024) ............................... 17

*In re Scotia Dev. LLC*,
2008 Bankr. LEXIS 5127 (Bankr. S.D. Tex. July 15, 2008) .............................................. 15

*Smith v. Smith*,
No. 6:21-CV-01244-ADA-DTG, 2022 U.S. Dist. LEXIS 150619 (W.D. Tex. July 1, 2022) ............................................................................................................................. 9

*In re TCI 2 Holdings, LLC*,
428 B.R. 117 (Bankr. D.N.J. 2010) ............................................................................... 11

*In re Tribune Co.*,
477 B.R. 465 (Bankr. D. Del. 2012) .............................................................................. 16

iv

*Tribune Media Co. v. Aurelius Capital Mgmt., L.P. (In re Tribune Media Co.)*,
    799 F.3d 272 (3d Cir. 2015).............................................................................................. 16

*Voltaire Asset Managers II, LLC v. Tresha-Mob, LLC*,
    No. SA-, 19-CV-341-XR; 2019 WL 13191885 (W.D. Tex. Apr. 10, 2019) ...................... 15

*Yucaipa Corp. Initiatives Fund, LLC v. Piccadilly Restaurants, LLC*,
    2014 WL 1871889 (W.D. La. May 6, 2014) ...................................................................... 16

v

The above-captioned debtors and debtors in possession (the "**Debtors**") submit this response to the Emergency Motion for a Stay Pending Appeal, an Interim Stay, and Certification to the Court of Appeals (ECF No. 3) (the "**Motion**") filed by the self-described "ad hoc group of excluded lenders" (the "**Minority AHG**") and respectfully state as follows.

### Preliminary Statement

The Minority AHG requests an extreme remedy on an emergency basis – an injunction preventing a global business with thousands of employees and customers from consummating its recently confirmed chapter 11 plan of reorganization. Every stakeholder except the few members of the Minority AHG supported the plan, and the bankruptcy court confirmed it after careful and painstaking consideration of an extensive evidentiary record and thorough legal analysis.

The Minority AHG concedes that there is no emergency and that, in their view, a stay is not necessary to preserve their appellate remedies. The Minority AHG nevertheless points to the potential for plan consummation as the emergency justifying precipitous relief. Its actual interest is quite different. The Minority AHG knows that the creditors committing to purchase the new equity under the plan can terminate their commitment under certain circumstances and that the risks of remaining in chapter 11 (well detailed in the evidentiary record below) threaten the value of the equity they have committed to purchase. The Minority AHG also knows that the Debtors' bank financing commitment is subject to timing constraints. After a decisive loss at trial, the Minority AHG strategically requests relief that could jeopardize the entire restructuring in the hope of creating post-confirmation settlement leverage. Settlement may be the economically rational choice in that scenario – a superior alternative to the destruction of value that would result from any extension of the chapter 11 cases.

But there is no basis for a stay pending appeal, and the Court should deny the Motion for at least two independent reasons. *First,* the Minority AHG's choice not to seek relief in the bankruptcy court is fatal. The supposed justification (counsel's inability to unmute his telephone to make an oral motion for a stay) does not withstand scrutiny or excuse deviation from the rules. It is also a transparent effort to evade review by the same court that just heard ample evidence about the risk of delay.

*Second*, the Minority AHG fails to satisfy any of the criteria for a stay pending appeal:

- *Likelihood of success on the merits*. Countless courts have approved financing transactions in chapter 11 cases where only certain creditors in a class receive consideration for their new money commitment. The Bankruptcy Code mandates equal treatment for *claims* in a particular class, but it does not require equal treatment for *claimants*. As several courts, including the bankruptcy court below, have recognized, the Supreme Court's decision in *LaSalle* does not require a debtor to make the opportunity available to all similarly situated creditors. Even if it did, the opportunity here was not exclusive, and the Minority AHG in fact submitted multiple competing offers. The bankruptcy court only needs to find that the backstop is necessary and its terms are reasonable, and the bankruptcy court here determined that was the case based on overwhelming evidence. The Minority AHG cannot demonstrate any likelihood of success on the merits.

- *Irreparable harm*. The Minority AHG concedes that it would not be irreparably harmed if the Court denies the stay. Regardless, the possibility of equitable mootness does not constitute irreparable harm in this jurisdiction.

- *Balance of harms and public interest*. The Minority AHG, a group of investment funds that hold approximately 11% of the Debtors' first lien obligations, asserts an entitlement to the same consideration that other creditors are receiving for placing capital at risk for several months. The Minority AHG does not come close to meeting its burden to establish that the balance of harms weigh in favor of a stay. To the contrary, here the Minority AHG has no capital at risk and admits that any harm it has suffered would be simple to remedy. This stands in stark contrast to the substantial harm that a stay would place on the Debtors, its business, its thousands of employees and the overwhelming majority of its creditors. The balance of harms and the public interest weighs decidedly against a stay.

Even if there were any justification for a stay pending appeal (there in not), the Minority AHG would need to protect the Debtors from the destruction of value resulting from an unsuccessful appeal. Courts typically require an appellant to post a bond to address potential

2

damages.  This requirement also deters meritless appeals filed for holdup value, like this one.  The burden to demonstrate why a bond is unnecessary in the on the Minority AHG, and it did not even attempt to meet that burden.  The undertaking here would be hundreds of millions of dollars.[1]

The purpose of chapter 11 is to allow for the rehabilitation of businesses for the benefit of all their stakeholders.  That is exactly what this chapter 11 plan accomplishes.  It gives the Debtors a sustainable capital structure that will allow its business to thrive, for the benefit of its employees, customers, and creditors.  For this to happen, the Debtors must consummate the plan and emerge from bankruptcy as soon as possible – and not later than **Tuesday, June 4**.  The Court should deny the Motion and allow this to happen.  But if the Court is inclined to grant the Motion, it should condition any stay on a bond sufficient in amount to protect the Debtors and their estates from the very real and substantial risks caused by any delay.

### Background

**A.   The Restructuring Support Agreement and Plan of Reorganization**

The Debtors filed their chapter 11 cases after reaching agreement with more than 80% in amount of their first and second lien creditors on the terms of a balance sheet restructuring.  The parties executed a restructuring support agreement that contemplates implementing the transaction through a "prepackaged" chapter 11 plan.  The transaction will eliminate $1.6 billion of secured debt, give holders of first lien claims takeback debt and rights to purchase new equity interests in the reorganized Debtors through an equity rights offering, give holders of second lien claims new equity interests in the reorganized Debtors, and provide for payment in full of unsecured claims.

---

[1] The Debtors request the opportunity to submit evidence on the amount of the bond required in this case if the Court is inclined to grant the Motion.

3

The restructuring support agreement includes commitments from supporting first lien creditors to backstop the equity rights offering, ensuring that the Debtors will raise sufficient capital to repay debt and support their business post-emergence.  The majority of the new equity is available for purchase in the rights offering by all first lien creditors ratably.  A portion ($86 million) is allocated for purchase only to the backstop parties, including an affiliate of the Debtors' equity sponsor, which holds one of the largest secured claims.  The backstop parties will also receive a premium (10%) paid in equity.  The restructuring support agreement includes a customary "fiduciary out" provision that allows the Debtors to pursue a higher or better offer, including an alternative means of raising capital.

After executing the restructuring support agreement, the Debtors commenced solicitation of votes on the *Joint Prepackaged Chapter 11 Plan of Reorganization of ConvergeOne Holdings, Inc. and Its Debtor Affiliates* (filed on the first day of the chapter 11 cases at Bankr. ECF No. 27) (as amended, the "**Plan**"),[2] then filed the chapter 11 cases.  The Debtors had requisite creditor support to confirm the Plan immediately, but nevertheless requested a modest confirmation schedule to give creditors ample time to review the transaction, submit alternative proposals, and object to the Plan.  The confirmation schedule was informed in part by the duration of the backstop commitment.  Backstop parties must reserve capital to satisfy their commitments, and investors cannot leave capital on the sidelines indefinitely or commit to purchase equity at an unknown time in the future, when the assumptions on which they underwrote the commitment may no longer be valid.  Like all backstop commitments, the backstop here is subject to certain milestones,  including the Debtors' emergence from bankruptcy.

---

[2] The Debtors filed technical modifications to the Plan on May 17, 2024 (Bankr. ECF No. 328).

4

### B.      The Minority AHG's Alternative Proposals and Plan Objection

Several members of the Minority AHG were aware of the restructuring discussions that led to the restructuring support agreement and backstop commitment.    The Minority AHG nevertheless waited almost two weeks after the Debtors commenced the chapter 11 cases before appearing, at which point the group demanded the opportunity to participate in the backstop on the same terms as the parties that negotiated it and reserved capital for weeks.  The Minority AHG then delivered two alternative proposals.  The first, delivered on April 26, was premised upon the same valuation as the Plan transaction.  The Debtors, through their special committee comprised of independent directors, considered the proposal and rejected it because it ignored the need to replace the DIP facility, did not provide higher or better recoveries relative to the Plan, and merely shifted the economic benefits that the Minority AHG complained about from a supermajority of creditors to a slim minority.  The second, delivered on May 8, was premised upon the same valuation, but included a purported commitment for a replacement DIP facility.  But that commitment was insufficient to fund an extension of the cases that would result from toggling to the alternative plan nine days prior to the confirmation hearing, and the proposed DIP was illusory because it would require priming existing lenders without their consent.  The proposal also lacked any meaningful stakeholder support and was unconfirmable on its face.  The Debtors, through the special committee, rejected the second proposal.  It was not a close call.

The Minority AHG filed the sole objection to Plan confirmation.  The objection argues that the backstop parties were given the exclusive opportunity to purchase new equity that, when coupled with the premiums they will receive for those commitments, violates the equal treatment requirement of section 1123(a)(4) of the Bankruptcy Code.  The Debtors responded to the

5

objection, arguing that the Minority AHG conflates the value that backstop parties will receive for their prepetition claims with value that they will receive for their new money commitment.

C.    **The Confirmation Hearing and Appeal**

The bankruptcy court held a confirmation hearing on May 17 and 22.  Following two days of testimony and argument, the bankruptcy court issued an oral ruling on May 23 confirming the Plan and overruling the Minority AHG objection.  The bankruptcy court found that the backstop was necessary and its terms were reasonable and negotiated at arms' length.  Like all courts that have considered this identical issue, the bankruptcy court declined to apply the Supreme Court's decision in *LaSalle* to mandate shopping a financing opportunity like the backstop here to the universe.  The bankruptcy court also stated that, to the extent *LaSalle* applies, the process was open and the Minority AHG had ample opportunity to submit a superior alternative.  The group's failure to do so was a result of its own motives, not a flawed plan process.  In describing the Minority AHG's alternative proposals, the bankruptcy court recognized that they failed to account for a necessary extension of the chapter 11 cases or the harm that would result from that based on uncontroverted evidence in the record.  The bankruptcy court entered the Plan confirmation order on the same day, which became immediately effective and enforceable based on the waiver of the automatic 14-day stay applicable to plan confirmation orders.

The Minority AHG waited five days from the confirmation order before seeking a stay pending appeal in this Court.  It never sought a stay in the bankruptcy court.  In addition to seeking a typical stay pending appeal, the Minority AHG also seeks an "interim" stay that would enjoin closing pending an extended briefing schedule and eventual decision.

6

## Legal Standard

To stay a plan confirmation order pending appeal, an appellant must show (1) likelihood of success on the merits; (2) irreparable injury should the stay not be granted; (3) absence of substantial harm to the other parties from granting of the stay; and (4) service to the public interest from granting of the stay. *Citadel Equity Fund Ltd. v. Serta Simmons Bedding, LLC (In re Serta Simmons Bedding, LLC)*, No. 4:23-cv-2173, 2023 U.S. Dist. LEXIS 112705, at *7 (S.D. Tex. June 29, 2023) (Hanen, J.) (citing *Vote. Org v. Callanen*, 39 F.4th 297, 302-03 (5th Cir. 2022)).  A stay pending appeal of a confirmation order is an "extraordinary remedy." *Id*. at *6; *see also Belcher v. Birmingham Trust Nat'l Bank*, 395 F.2d 685, 685 (5th Cir. 1968).  Stay applicants "bear the burden of showing why 'extraordinary circumstances' demand that [the court] exercise discretion in their favor." *All. for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *21 (5th Cir. Apr. 12, 2023).

The first two factors "are the most critical." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (citation omitted).  But the Minority AHG must satisfy all four elements to prevail. *See Arnold v. Garlock Inc*., 278 F.3d 426, 438–39 (5th Cir. 2001); *see also In re Fiesta Inn & Suites, LP*, No. 09-51355-C, 2009 WL 5195961, at *4 (Bankr. W.D. Tex. Dec. 21, 2009) (citation omitted) ("If a party fails to satisfy any one of the four requirements for a stay pending appeal, then the court will be acting within its discretion to deny the stay.").

## Argument

## I.    The Minority AHG's Failure to Seek Relief in the Bankruptcy Court Compels Denial

A party seeking to stay a bankruptcy court order pending appeal ordinarily "must move first in the bankruptcy court" for that relief.  Fed. R. Bankr. P. 8007(a)(1).  A motion made in the appellate court must set forth the circumstances that entitle the movant to apply to the appellate

AMERICAS 127080279

court, and must include (i) a showing that moving first in the bankruptcy court would be impracticable; (ii) a statement that a motion was made in the bankruptcy court but that court has not yet ruled; or (iii) a statement that the bankruptcy court has ruled, setting out any reasons given for the ruling.  Fed. R. Bankr. P. 8007(b)(2)(A)-(B).  The Minority AHG has satisfied none of these requirements.   A "stay may be denied on that basis alone." *Glassel v. Seamless Operating Grp.*, LLC, No. H-13-1158, 2013 U.S. Dist. LEXIS 193394, at *5-6 (S.D. Tex. June 6, 2013) (denying stay where "the movant has not offered an explanation for why the bankruptcy court denied the stay"); *see also* 10 Collier on Bankruptcy ¶ 8007.08 ("Failure to present the motion to the bankruptcy court in the first instance will ordinarily result in denial of a motion seeking the stay filed with the district court . . . .").

The Minority AHG offers no legitimate explanation in support of its conclusory statement that moving in the bankruptcy court would be "impractical."  According to the Minority AHG, it would have been impractical to move first in the bankruptcy court because counsel (who appeared via telephone and with his video camera turned off to hear the bankruptcy court's oral ruling) attempted to make an oral motion for a stay but could not unmute his telephone.  (Mot. at 9.) Technical issues do not suffice for a showing that the bankruptcy judge is "unavailable" or that relief from the bankruptcy court is "improbable."  *In re BGI, Inc.*, 504 B.R. 754, 761 (S.D.N.Y. 2014) (quoting 10 Collier on Bankruptcy ¶ 8005.111 (16th ed. 2013)).  And counsel's muted telephone has no bearing on the Minority AHG's ability to file a written motion, as the rules require, and which it could have done within hours of the confirmation decision, instead of waiting *five days* to file the Motion with *this Court*.

That the Debtors intend to consummate the plan as soon as possible also has no bearing on the Minority AHG's ability to file a motion in the bankruptcy court.  The Debtors' effort to exit

8

bankruptcy is no secret and was in fact the subject of testimony from several witnesses at the plan confirmation hearing. The vast majority of bankruptcy cases benefit from an expedited process. The exception that the Minority AHG proposes would swallow the rule. And its expectation that the bankruptcy court would deny the relief requested (which may be true, as the bankruptcy court would likely see the delay strategy for exactly what it is) is nothing more than a "conclusory allegation[] about the impracticability of seeking relief in the bankruptcy court first." *Smith v. Smith*, No. 6:21-CV-01244-ADA-DTG, 2022 U.S. Dist. LEXIS 150619, at *4-5 (W.D. Tex. July 1, 2022).

In *Smith*, the movant asserted that the bankruptcy court "had pronounced that it would not be willing to issue any stay" – a far stronger signal than bankruptcy court's stay waiver here. *Id*. at *4. Yet the district court held that the movant's allegations "[do] not satisfy the requisite showing of impracticability to excuse the failure to seek relief in the bankruptcy court first." *Id*. at *4-5. Indeed, allegations that a bankruptcy court is unwilling to stay its own ruling "would likely be true in most cases, essentially rendering the requirement to seek relief in the bankruptcy court a nullity." *Id*. at *4. The Minority AHG had ample time to seek a stay in the bankruptcy court. Instead, it chose to wait five days after the bankruptcy court's decision to seek a stay in this Court, justifying its neglect by reciting typical and unremarkable facts about the Debtors' effort to emerge from bankruptcy.

This is fatal. The Court need not address the merits of the request for a stay pending appeal and should instead deny the Motion without prejudice to the Minority AHG seeking relief in the bankruptcy court, as the Rules require. *See Balke v. Carmichael*, No. H-18-731, 2019 U.S. Dist. LEXIS 131276, at *2 (S.D. Tex. Aug. 6, 2019) ("Because the court concludes that [appellants] have not shown that moving in the bankruptcy court would be impracticable, the court denies the

AMERICAS 127080279

appellants' motion for a stay under Rule 8007, without prejudice to consideration of an appeal from any decision of the bankruptcy court on the motion for a stay.").

## II.     There Is No Basis for a Stay Pending Appeal

### A.     The Minority AHG is Unlikely to Succeed on the Merits

#### i.     The Minority AHG Must Demonstrate *Likelihood* of Success on the Merits, Not Merely a *Substantial Possibility*

The Minority AHG argues for a lower standard of "substantial possibility of success" based on its contention that its appeal "raises a serious legal question" (Mot. at 10.)  But the lower standard applies only "if the case presents a serious legal question *and* the other three factors are '**heavily tilted** in the movant's favor.'" *In re Serta Simmons Bedding, LLC*, 2023 U.S. Dist. LEXIS 112705, at *7 (quoting *In re First S. Sav. Ass'n*, 820 F.2d 700, 709 n.10 (5th Cir. 1987)) (emphasis in original).  The appeal does not pose a "serious legal question."  It raises the same disparate treatment argument that numerous courts have considered under virtually identical facts.  The Minority AHG cannot demonstrate any of the other factors, let alone show that they are "heavily tilted" in its favor.  It must satisfy the more stringent "likelihood" standard, and it cannot do so.

#### ii.     The Plan Provides Identical Treatment for Prepetition Claims

The Bankruptcy Code "does not require identical treatment for all class members in all respects under a plan." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 249-50 (Bankr. S.D.N.Y. 2007).  Instead, "the requirements of section 1123(a)(4) apply only to a plan's treatment on account of particular claims or interests in a specific class – not the treatment that members of the class may separately receive under a plan on account of the class members' other rights or contributions." *Id*.  Section 1123(a)(4) of the Bankruptcy Code does not require giving the same precise economic "opportunity" to every creditor in a class. *Ad Hoc Comm. of Non-Consenting Creditors v. Peabody Energy Corp. (In re Peabody Energy Corp.)*, 933 F.3d 918, 927 (8th Cir.

10

2019) ("The right to participate in the Private Placement was consideration for valuable new commitments.  Consequently, the plan did not violate the equal-treatment rule of § 1123(a)(4)."); *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 133 (Bankr. D.N.J. 2010) (rejecting argument that a plan provides disparate treatment in violation of section 1123(a)(4) when only certain creditors from a specific class were allowed to backstop a rights offering); *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 749 (2d Cir. 1992) ("[T]he 'same treatment' standard of section 1123(a)(4) does not require that all claimants within a class receive the same amount of money.").

The backstop commitment provides significant value to the Debtors by ensuring that the equity rights offering will be fully funded.  Courts routinely approve backstop consideration over disparate treatment objections.  *See, e.g.*, *In re CHC Group Ltd.,* No. 16-31854 (BJH), 2017 WL 11093971, at *12 (Bankr. N.D. Tex. Mar. 3, 2017) (rejecting disparate treatment argument where backstop fees were provided in exchange for the backstop commitment); *In re LATAM Airlines Group S.A.*, No. 20-11254 (JLG), 2022 WL 2206829, at *35-36 (Bankr. S.D.N.Y. June 18, 2022) (confirming plan where "the Backstop Fees and Direct Allocation are distributed to the Backstop Parties in consideration for their willingness to backstop the Class C Notes and the ERO Rights Offering, not on account of their General Unsecured Class 5 Claims.").  Despite the Minority AHG's efforts to conflate backstop economics with plan treatment for prepetition claims, courts distinguish between the two types of consideration by reviewing evidence to determine whether the backstop is necessary and its terms are reasonable, and they consistently find that to be the case.  *See, e.g.*, *In re EP Energy Corp.*, No. 19-35654 (MI) (Bankr. S.D. Tex. Aug. 27, 2020) [ECF No. 1411] (confirming plan with non-pro rata backstop); *In re Seadrill Ltd.*, No. 21-30427 (DRJ) (Bankr. S.D. Tex. Oct. 26, 2021) [ECF No. 1158] (same); *In re Cineworld Grp., PLC*, No. 22-90168 (MI) (Bankr. S.D. Tex. May 2, 2023) [ECF No. 1625] (same).  The bankruptcy court found,

11

based on its review of the robust evidentiary record, that this backstop here is necessary and reasonable.

### iii.    *LaSalle* **Does Not Provide a Framework for Review**

The Minority AHG fights against the weight of legal authority that is directly on point by arguing that the Supreme Court decision in *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999), applies wherever a group of creditors receives an exclusive investment opportunity, and that the opportunity itself results in disparate treatment under section 1123(a)(4) of the Bankruptcy Code. But, as the bankruptcy court correctly held, *LaSalle* addressed when it is permissible for holders of existing equity interests to receive or retain value on account of those equity interests where senior creditors are not being paid in full and the plan is subject to the cramdown requirements under section 1129(b)(2) of the Bankruptcy Code. *Id.* at 437. The decision does not cite section 1123(a)(4) or consider whether certain holders of claims in an accepting class can receive the exclusive opportunity to provide new capital under a plan accepted by all impaired classes. Courts have addressed that separate question many times over in the 25 years since the *LaSalle* decision – and the answer is unequivocally yes.

Neither the bankruptcy court nor the many other courts that have reached the same result ignored binding Supreme Court precedent. They simply recognized that *LaSalle* does not apply. *LaSalle's* irrelevance to the issue is clear from the face of the decision. *LaSalle* specifically examines the meaning of "on account of" under section 1129(b) of the Bankruptcy Code. In doing so, *LaSalle* distinguishes the phrase "on account of" in section 1129(b) from similar but distinct language used in other sections, such as "in exchange for" in section 1123(a)(5)(J). *Id.* at 450. The difference, according to the Court's application of basic canons of statutory interpretation,

must be intentional, and it is about the degree of causation, with "on account of" being less direct and "for" being more direct. *Id.* at 451. Because *LaSalle* itself distinguishes the statutory language in section 1123(a)(4) of the Bankruptcy Code, its "principles" cannot travel to this context as the Minority AHG argues.

*In re America-CV Station Group, Inc.*, 56 F.4th 1302 (11th Cir. 2023) does not provide the missing link. The Minority AHG cites this case as a single example applying *LaSalle* outside of the cramdown context. It involves a post-solicitation modification of a plan that initially gave reorganized equity to all four prepetition equity holders to just one of the equity holders – a company controlled by the debtors' CEO. *Id.* at 1305. The left-behind equity holders challenged the debtors' motion to modify the plan and argued that they were entitled to new disclosure. *Id.* The bankruptcy court overruled the objection, finding that the left-behind equity holders were deemed to reject and therefore did not require disclosure. *Id.* at 1308. The appellate court reversed, holding that the right to purchase new equity was a property interest, received in that case on account of their existing equity interests, that would have entitled the equity holders to vote. *Id.* at 1310-11. The court cites *LaSalle* for that limited and unremarkable proposition, but then analyzes the error of giving plan consideration originally intended for four equity holders to just one under section 1123(a)(4). *Id.* at 1312. Like *LaSalle*, the right to purchase new equity was given in direct consideration for the existing equity interests. The Minority AHG relies on *LaSalle* to draw a straight line from the backstop premium to the prepetition claim, despite the fact that the bankruptcy court found the backstop necessary, reasonable, and distinct from the plan treatment for prepetition claims. *LaSalle* and *America-CV Station Group* do not carry the load that the Minority AHG put on them.

AMERICAS 127080279

But even if *LaSalle* applies here (it does not), the Plan satisfies its requirements. The Minority AHG suggests that *LaSalle* imposes a one-size-fits-all approach to market exposure. The rule is not rigid, and *LaSalle* expressly declined to decide what constitutes a market test. *See LaSalle*, 526 U.S. at 458 ("Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity is a question we do not decide here."). The Minority AHG had more than six weeks from the chapter 11 filings until the confirmation hearing to present a higher and better offer. It submitted multiple alternative proposals, all with the benefit of full transparency on the number to beat and access to public documents reflecting the backstop commitment. Its offers were not higher or better – they were not even close. The Minority AHG elected not to participate in the market and now seeks to convince the Court that a market test is something different. Of course, that test would make backstopped rights offerings in chapter 11 an impossibility, but they are standard.

### B. The Minority AHG Concedes That it is Not Irreparably Harmed Absent Relief

The Minority AHG states that it faces the *possibility* of irreparable harm absent a stay. At the same time, the group states that, in its view, a court can fashion relief without unwinding the Plan. The relief it references appears to be some shift in the value of the reorganized Debtors' equity. In other words, the Minority AHG seeks monetary damages, and it is well-settled that "[a]n injury is not irreparable if it can be fixed by a monetary award." *Am. Multi-Cinema, Inc. v. Nat'l CineMedia, LLC (In re Nat'l CineMedia, LLC)*, No. 4:23-CV-02414, 2023 U.S. Dist. LEXIS 139189, at *23 (S.D. Tex. Aug. 4, 2023) (citing *Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985)).

The possibility of equitable mootness also cannot constitute irreparable harm, as this Court recently confirmed. *See In re Serta*, 2023 U.S. Dist. LEXIS 112705, at *21-25 (recognizing that

"[m]any district courts in this circuit have held" that the risk of equitable mootness does not constitute irreparable injury); *see also Voltaire Asset Managers II, LLC v. Tresha-Mob, LLC*, No. SA-19-CV-341-XR, 2019 WL 13191885, at *4 (W.D. Tex. Apr. 10, 2019) ("[C]ourts have consistently held the risk of equitable mootness alone does not establish the irreparable injury needed to obtain a stay pending appeal."). Indeed, "[i]f the risk of equitable mootness alone were sufficient to constitute irreparable harm, virtually every confirmation order in every bankruptcy case would be subject to a stay pending appeal." *In re Scotia Dev. LLC,* No. 07-20027-C-11, 2008 Bankr. LEXIS 5127, at *15 (Bankr. S.D. Tex. July 15, 2008).[3]

### C.     The Balance of Harms Tips Decidedly to the Debtors

Despite conceding that it would not suffer irreparable harm absent a stay, and notwithstanding the fact that the members of the Minority AHG have not committed any capital in connection with this reorganization, the Minority AHG argues that it faces greater harm than the other parties. The fundamental error in the Minority AHG's position is its cavalier suggestion that the Debtors can simply modify the Plan to reallocate the backstop consideration – a "tweak" that will remedy the purported flaw in an instant. But the Debtors cannot impose new contract terms on their creditors without complying with all applicable provisions of the Bankruptcy Code. And while a court can provide a roadmap to remedy flaws that render a plan unconfirmable, it cannot force the Debtors' counterparties to accept those terms. Parties may agree to the Minority AHG's proposed reallocation. If they do not, the record below includes detailed evidence of the cost of remaining in bankruptcy and the loss of equity value. Those amounts exceed any harm to

---

[3] The Minority AHG's reliance on *In re Herrera*, No. 09-52974-C, 2010 WL 148182, at *3 (Bankr. W.D. Tex. Jan. 8, 2010) is puzzling. In that case, the court *denied* an individual debtor's stay request, noting that "a majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *Id*.

15

the Minority AHG by a large multiple, and the Minority AHG would need to indemnify the

Debtors against losses caused by an unsuccessful attempt to reverse the confirmation order.  *See*

*In re Tribune Co.*, 477 B.R. 465, 482 n.11 (Bankr. D. Del. 2012) ("[T]he movant seek[ing]

imposition of a stay without a bond . . . has the burden of demonstrating why a court should deviate

from the ordinary full security requirement."); *In re Motors Liquidation Co.*, 539 B.R. 676, 686

(Bankr. S.D.N.Y. 2015) ("The purpose of requiring a bond in this context is to indemnify the party

prevailing in the original action against loss caused by an unsuccessful attempt to reverse the

holding of the bankruptcy court.") (citing *Tribune Media Co. v. Aurelius Capital Mgmt., L.P. (In*

*re Tribune Media Co.)*, 799 F.3d 272, 281 (3d Cir. 2015)).

> **D.    A Stay of the Confirmation Order Would Not Serve the Public Interest**

"The public interest requires bankruptcy courts to consider the good of the case as a whole,

and not individual creditors' investment concerns." *In re Adelphia Commc'ns. Corp.*, 368 B.R. at

284.  Courts "recognize the strong public 'need for finality of decisions, especially in a bankruptcy

proceeding.'" *Yucaipa Corp. Initiatives Fund, LLC v. Piccadilly Restaurants, LLC*, No. 14-0609,

2014 WL 1871889, at \*5 (W.D. La. May 6, 2014) (citation omitted).  The need for finality is

particularly acute here, given the evidence of the costs of remaining in bankruptcy.  The Minority

AHG's indifference to these risks notwithstanding, jobs and stakeholder recoveries remain in

jeopardy.  The public interest would be undermined by facilitating the Minority AHG's holdup

ambitions, to the detriment of an operating business.

## III.    There is No Basis for Certification to the Court of Appeals

Like the stay request, the certification request has a fatal procedural flaw.  "Only the court

where the matter is pending . . . may certify a direct review." Fed. R. Bankr. P. 8006(d).  This

matter is still pending in the bankruptcy court, not this Court.  *See* Fed. R. Bankr. P. 8006(b) ("For

purposes of this rule, a matter remains pending in the bankruptcy court for 30 days after the effective date under Rule 8002 of the first notice of appeal from the judgment, order, or decree for which direct review is sought. A matter is pending in the district court or BAP thereafter."). A certification motion "must be filed with the clerk of the court where the matter is pending." Fed. R. Bankr. P. 8006(f)(1). The Court should deny the procedurally improper request.

In addition, the Court should deny the request on the merits. The Minority AHG asks for certification to give the Fifth Circuit an opportunity to interpret *LaSalle*. But the only potentially relevant basis for certification is a determination by this Court that the confirmation order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance. 28 U.S.C. § 158(d)(2)(A). The Minority AHG simultaneously argues that there is clear and guiding Supreme Court precedent in its merits argument and then suggests that there is no controlling circuit level or Supreme Court decision on point for purposes of certification. Both cannot be true. Regardless, lower courts are not looking for guidance on the issues raised in this appeal. For more than two decades, courts in this circuit have had no difficulty resolving the question of whether payments such as the backstop premium here violate the Bankruptcy Code. *See, e.g.*, *In re Sanchez Energy Corp.*, No. 19-34508, 2024 WL 1926222, at *5 (Bankr. S.D. Tex. Apr. 30, 2024) (citing *In re Peabody Energy Corp.*, 933 F.3d at 925); *see also supra* at 12-13. There are no conflicting decisions to resolve, and there is no confusion to dispel. Certification is another transparent attempt to create undue delay.

The Minority AHG's suggestion that certification is necessary to advance the progress of the case is absurd. The bankruptcy court confirmed the Plan on May 23, and, absent a stay, the Debtors plan to emerge by June 4. This strategic appeal and the stay request, which the Minority

17

AHG itself states is unnecessary to avoid equitable mootness, is the only thing standing in the Debtors' way.  The present motion is attempting to do the very opposite of advancing the progress of the case.

## **CONCLUSION**

For these reasons, the Debtors request that the Court deny relief requested in the Motion.

Dated: May 31, 2024
      Houston, Texas

**WHITE & CASE LLP**

*/s/ Charles R. Koster*
Charles R. Koster (Texas Bar No. 24128278)
**WHITE & CASE LLP**
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com

**Attorney-In-Charge for the Debtors and Debtors in Possession**

Of Counsel:

Bojan Guzina (*pro hac vice* pending)
Andrew F. O'Neill (*pro hac vice* pending)
Erin R. Rosenberg (*pro hac vice* pending)
Blair M. Warner (*pro hac vice* pending)
Adam T. Swingle (*pro hac vice* pending)
**WHITE & CASE LLP**
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
Email: bojan.guzina@whitecase.com
      aoneill@whitecase.com
      erin.rosenberg@whitecase.com
      blair.warner@whitecase.com
      adam.swingle@whitecase.com

*Counsel to the Debtors and*
*Debtors in Possession*

18

AMERICAS 127080279

## <u>Certificate of Service</u>

I certify that on May 31, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

/s/ *Charles R. Koster*

Charles R. Koster

19

AMERICAS 127080279