IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| CONVERGEONE HOLDINGS, INC., *et al.*, § | Civil Case No. 4:24-cv-02001 |
| *Debtors*. § | |
| § | Bankruptcy Case No. 24-90194 |
| § | |
| § | |
| Ad Hoc Group of Excluded Lenders, § | |
| *Appellant*. § | |

**ORDER**

Before the Court is the Emergency Motion for a Stay Pending Appeal, an Interim Stay, and Certification to the Court of Appeals (Doc. No. 3) filed by the Ad Hoc Group of Excluded Lenders ("Minority Lenders"). Two groups, the First Lien Ad Hoc Group ("Majority Lenders") and the Debtors, have filed responses in opposition. (Doc. Nos. 11, 17).

This matter originates in the bankruptcy filed by ConvergeOne Holdings, Inc., and its affiliated companies (the "Debtors"). (Doc. No. 11 at 1). The Debtors are in the information technologies sector that provides services such as cybersecurity, software development, cloud computing, and application and software development. While headquartered in Minnesota, Debtors filed for bankruptcy protection in early April 2024 in the Houston Division of the Southern District of Texas.

**I.    Background**

The Debtors filed their Chapter 11 bankruptcy case on April 4, 2024. Before doing so, they reached an agreement with approximately 80% of their first and second lien holders. Certain parties entered into a "restructuring support" agreement in contemplation of a "prepackaged Chapter 11 Plan" (hereinafter, the "Plan").

This agreement in principle was designed to eliminate $1.6 billion of secured debt. The first lien holders agreed to take back debt, and they additionally received the right to purchase new equity interests in the reorganized Debtors through an equity right offering. The agreement would also give holders of second lien claims new equity interest in the reorganized Debtor. Importantly, it also would provide payment in full of unsecured claims.

This restructuring support agreement included commitments from the Majority Lenders to backstop the equity right offering, ensuring that the Debtors will raise sufficient capital to repay debt and support their business after emerging from bankruptcy. A portion of this new equity offering is allocated for purchase to those parties that agreed to backstop the Plan. These "backstoppers" were also to receive a 10% premium paid in equity. The backstopping parties also had to reserve capital to satisfy their commitments and were subject to certain milestones.

After the Plan had been filed for some time, the Minority Lenders objected to this aspect of the Plan because they were excluded. They offered two alternatives, both of which were rejected. The first was based upon the same valuation as the Plan transaction but was rejected primarily because it allegedly ignored the need to replace the Debtor in Possession ("DIP") facility. The second attempt tried to fix the DIP omission, but it lacked enough support from the stakeholders and, as proffered, was not able to be confirmed.

Eventually, the Plan was passed with the Minority Lenders filing the only objections. The factual basis of the objection was their exclusion from the opportunity to purchase the new equity. The legal objection was premised on the argument that their exclusion violated the equal treatment requirements of the Bankruptcy Code. *See* 11 U.S.C. § 1123(a)(4) ("Not withstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest

agrees to a less favorable treatment of such particular claim or interest."). The Debtors and proponents of the Plan responded in opposition that the Plan treated all prepetition claims the same, but that the extra value the Majority Lenders received was for new financial commitments.

The Bankruptcy Court held a two-day hearing which included both testimony and argument from all sides. The Bankruptcy Court found the backstop was necessary and reasonable, and that the Plan should be confirmed. The Plan was confirmed on May 23, 2024. Rather than immediately seek a stay pending appeal from the Bankruptcy Court, the Appellants waited several days and filed for a stay in this Court. In addition to the stay, Appellants seek a certification of certain issues to the Fifth Circuit, including whether the Confirmation Plan violates the dictates of 11 U.S.C. § 1123(a)(4) and is contrary to the Supreme Court's dictates in *Bank of America National Trust & Savings Association v. 203 N. LaSalle St. Partnership*, 526 U.S. 434 (1999). Appellees oppose both the stay and certification both on procedural and substantive grounds.

## II. Procedural Analysis

Rule 8007 of the Bankruptcy Rules requires that all initial motions should be filed in the Bankruptcy Court first.

Rule 8007. Stay Pending Appeal; Bonds; Suspension of Proceedings

> (a) Initial motion in the Bankruptcy Court
>     (1) In general
>     Ordinarily, **a party must move first in the bankruptcy court for the following relief**:
>
>     (A) **a stay of a judgment, order, or decree of the bankruptcy court pending appeal**;
>     (B) the approval of a bond or other security provided to obtain a stay of judgment;
>     (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or
>     (D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).

3

Fed. R. Bankr. P. 8007(a) (emphasis added).

Clearly, Appellants did not follow that rule as they filed in the District Court first. There are, however, exceptions to Rule 8007(a). These are found in Rule 8007(b).

> (b) Motion in the district court, the BAP, or the Court of Appeals on direct appeal
>
> > (1) Request for relief
> > A motion for the relief specific in subdivision (a)(1)—or to vacate or modify a bankruptcy court's order granting such relief—may be made in the court where the appeal is pending.
> >
> > (2) Showing or statement required
> > The motion must:
> >
> > > (A) show that moving first in the bankruptcy court would be impracticable; or
> > > (B) if a motion was made in the bankruptcy court, either state that the court has not yet ruled on the motion, or state that the court has ruled and set out any reasons given for the ruling.

Fed. R. Bankr. P. 8007(b).

No party contends that subsection (2)(B) applies. This Court finds that Appellants have not satisfied subsection (2)(A) either. Appellants state that they did not make a motion to stay in the Bankruptcy Court because counsel had problems unmuting his computer.[1] No party questions the accuracy of this statement, but this explanation does not explain the delay. The second day of the two-day hearing was held on May 22, 2024, a Wednesday afternoon. According to the record, it ended at 4:15 p.m. The Confirmation Order was signed the next day, on a Thursday. At that point, it was plain what the ruling of the Bankruptcy Court was. Counsel's inability to unmute a computer on Wednesday does not explain the failure to file a motion in the Bankruptcy Court once the hearing ended. Despite the fact that the Bankruptcy Court was open and available, the motion to stay was not filed at all in the Bankruptcy Court. Instead, it was filed in this Court on May 28, 2024, the following Tuesday. No explanation has been proffered as to why

---

[1] The hearing in the Bankruptcy Court was described by Appellants' counsel as a "hybrid virtual hearing." (Doc. No. 3 at 11).

4

the motion was not brought to the Bankruptcy Court in the intervening time period; nor is there any explanation as why—if an emergency truly existed—the motion was not filed in this Court until five days after the ruling.

The Court finds the delay to be telling, as not only was the Bankruptcy Court available, but this Court was the miscellaneous judge in May and was in fact available throughout the entire time period. The Court finds the timing and the choice of courts decisive. One of the purposes of first filing a stay in the bankruptcy court that actually issued the order is to have the court that is most familiar with the fact, the law, the issues, and the history of the case consider the emergencies first.

This Court hereby denies Appellants' Motion for a Stay due to their failure to seek relief from the Bankruptcy Court first.[2]

## III. Substantive Analysis

While the Court denies the motion on procedural grounds, it also denies the motion on the merits as well. A stay during an appeal is an "extraordinary remedy" and requires a substantial showing. *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019); *Belcher v. Birmingham Tr. Nat. Bank*, 395 F.2d 685, 686 (5th Cir. 1968). The parties here agree on the factors that a court considers when ruling on an appeal from the denial of a motion to stay pending appeal. Those factors are similar to those courts consider when facing a request for injunctive relief. They are: (1) likelihood of success on the merits;[3] (2) irreparable injury should the stay not be granted; (3) absence of substantial harm to the other parties from granting of the

---

[2] This Court is denying the Motion, but some courts have indicated that failure to make such a filing deprives the district court of jurisdiction. *In re Anderson*, 560 B.R. 84 (S.D.N.Y. 2016). If accurate, the Court should dismiss the Motion instead of denying it.

[3] The Fifth Circuit has relaxed the requirement of demonstrating a likelihood of success on the merits to one of only having to demonstrate "substantial merit" if the case presents a serious legal question *and* the other three factors are "**heavily tilted** in the movant's favor." *In re First S. Sav. Ass'n*, 820 F.2d 700, 709 n. 10 (5th Cir. 1987) (emphasis in original). None of the parties have made that claim here.

5

stay; and (4) service to the public interest from granting of the stay. *Vote.Org v. Callanen*, 39 F.4th 297, 302–03 (5th Cir. 2022).

The Court is called upon to review both factual findings and conclusions of law made by the Bankruptcy Court. The decision to deny a stay is reviewed on an abuse of discretion standard. *In re Barrier*, 776 F.2d 1298, 1299–1300 (5th Cir. 1983). A bankruptcy court abuses its discretion if it seriously errs in its determination that the moving party has established its case for a stay/injunctive relief. *Id.* Its findings of fact are reviewed on a "clearly erroneous" standard. *In re First South Savings Ass'n*, 820 F.2d 700, 711 (5th Cir. 1987). A finding is clearly erroneous if "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). Conclusions of law are reviewed *de novo*. Although no factor is dispositive, the likelihood of success and irreparable injury factors are deemed most critical. *Alliance for Hippocratic Medicine v. FDA*, 2023 WL 2913725, at *4 (5th Cir. 2023). To prevail on either, the movant must make a "strong" not merely "possible" showing. *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

### A. Likelihood of Success on Appeal

All parties agree that the first element the Court must consider in a motion to stay is the appellant's likelihood of success on appeal. The Court finds that the Appellants have the burden to make a substantial showing that they will prevail on the merits. *Vote.Org*, 39 F.4th at 302–03. The Court need not decide the merits here merely because the issue is currently joined via a motion for a stay. Nevertheless, the Court finds that the Appellants have not demonstrated a likelihood of success on the merits of their respective appeals.

The gist of Appellants' argument is that the Plan violates 11 U.S.C. § 1123(a)(4) because the Minority Lenders and the Majority Lenders are not being treated equally. In addition to the obvious wording of the statute, Appellants rely on the Supreme Court's ruling in *Bank of America National Trust & Savings Association v. 203 N. LaSalle St. Partnership*, 526 U.S. 434 (1999). In that case, the Supreme Court was faced with an arguably similar, but certainly not identical, situation. Former partners of the debtor received ownership in a reorganized partnership in exchange for certain capital contributions. More senior creditors, however, would not be paid in full and objected. The primary question was whether the former partners (the junior account holders) had received an exclusive opportunity on account of their prepetition interests in the debtor to the detriment of senior debtors. The Supreme Court found this division to be impermissible. *Id.* at 458 ("It is enough to say . . . that plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii)."). While this case is broadly cited, its actual holding does not control this fact situation, nor does it necessarily even rely upon or interpret 11 U.S.C. § 1123(a)(4).

Nevertheless, the Appellants use a combination of *LaSalle* and the statute to conclude that any time a plan provides unequal treatment for claims of a particular class, then that plan should not be confirmed.

Appellees concede that as a general rule unequal treatment for similarly situated creditors is impermissible. They hasten to point out that all prepetition claims have been equally treated. Moreover, they strongly argue that this is not the situation here. They point out that the only reason that the Majority Lenders received this favorable equity opportunity was in exchange for their commitment to backstop the Debtors' $245 million rights offering. This commitment was

7

made in an effort to ensure the equity rights offering would be fully funded. Similar arguments have found traction in a number of circuits including the Fifth Circuit.

> Cases from other circuits that have dealt with the issue, however, appear to agree that a reorganization plan may treat one set of claim holders more favorably than another so long as the treatment is not for the claim but for distinct, legitimate rights or contributions from the favored group separate from the claim.
>
> * * *
>
> The Fifth Circuit concluded that a plan proponent's payments to certain members of a debtor power cooperative did not violate § 1123(a)(4) because the payments were "reimbursement for plan and litigation expenses," not payments "made in satisfaction of the [members'] claims against [the debtor]." *Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518–19 (5th Cir. 1998).

*In re Peabody Energy Corp.*, 933 F.3d 918, 925 (8th Cir. 2019), also citing *Ahuja v. LightSquared, Inc.*, 644 Fed. App'x 24, 29 (2d Cir. 2016).

The likelihood of success test or substantial possibility of success has been described as an intermediate test between possible and probable. *In re 473 W. End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (citing *In re Country Squire Assocs. Of Carle Place, L.P.*, 203 B.R. 182, 184 (2d Cir. 1996). Appellants' brief argues this standard was more or less set up to weed out frivolous appeals. (Doc. No. 3 at 14).

As an initial matter, this Court does not find that the appeal is necessarily frivolous—especially when one considers the lack of Fifth Circuit precedent directly on point. Moreover, the relative speed at which the bankruptcy progressed and the fact that it was a "prepacked" Chapter 11 plan (and that much of the negotiations concerning the restructuring support agreement took place before the Debtor filed the Chapter 11 cases) is another factor that could provide the Appellants with fodder for their appeal.

8

Nevertheless, the Court does not find these factors raise Appellants' position to the level of a likelihood of success. The majority of cases both inside the Fifth Circuit (and elsewhere) hold that compensation for post-petition consideration is not banned by the Bankruptcy Code even if the eventual result is unequal treatment between members of the same class of claims and interests.

### B.  Irreparable Injury

The Appellants' primary contention with respect to the element of irreparable injury focuses on the chance that, should the Plan be implemented, their appeals will be thwarted by a claim of equitable mootness. This Court has described this concept in at least three prior opinions and repeats the discussion here merely for purposes of background.[4]

Equitable mootness as a concept in bankruptcy law has existed for approximately four decades. Some trace its beginnings back to *In re Roberts Farm, Inc.*, 652 F.2d 793 (9th Cir. 1981). It has "evolved in bankruptcy appeals to constrain appellate review, and potential reversal, of confirming reorganization plans." *In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009). Unlike the "traditional" or "constitutional" concept of mootness whereby a ruling of a court is withheld because it would have little or no effect, in equitable mootness the problem is just the opposite—a court ruling would have too much effect. It is perhaps more accurately described as a doctrine of judicial abstention. It has been implemented in situations where a successful bankruptcy appeal would "knock the props out from under the authorization for every transaction that has taken place, [and] would do nothing other than create an unmanageable situation for the Bankruptcy Court." *In re Roberts*, 652 F.2d at 797. It has been described as

---

[4] This discussion was drawn from this Court's prior opinions in other bankruptcy appeals. *See, In re Walker Cnty. Hosp. Corp. d/b/a Huntsville Mem. Hosp.*, No. 4:20-CV-00911, 2020 WL 6482016 (S.D. Tex. Sept. 30, 2020), *aff'd sub nom. Matter of Walker Cnty. Hosp. Corp.*, 3 F.4th 229 (5th Cir. 2021); *In re Serta Simmons Bedding, LLC*, No. AP 23-09001, 2023 WL 4275019 (S.D. Tex. June 29, 2023); *In re Nat'l CineMedia, LLC*, Nos. 4:23-CV-2414 and 4:23-CV-2485, 2023 WL 5030098 (S.D. Tex. Aug. 4, 2023).

9

pitting the concepts of finality against appellate rights or as one author describes it, "[p]ragmatism v. [p]rinciple."⁵ The rationale behind the doctrine has been described as follows:

> That early history and subsequent interpreting case law helped establish its purpose as a prudential doctrine. Since *Robert Farms*, equitable mootness "has evolved in bankruptcy appeals to constrain appellate review, and potential reversal, of order confirming reorganization plans." It has evolved into a "kind of appellate abstention that favors the finality of reorganizations and protects the interrelated multi-party expectations on which they rest. It is constantly trying to "strik[e] the proper balance between the equitable considerations of finality and good faith reliance on a judgment and competing interests that underlie the right of a party to seek review of a bankruptcy order adversely affecting him." Case law suggests that the "paramount policy concern reflected by equitable mootness is the protection of third parties' interest who are not participating in the bankruptcy appeal." However, equitable mootness also furthers the "importance of finality to bankruptcy proceedings. Finality is vital to restoring third parties' confidence in a debtor and allowing it to successfully emerge from bankruptcy. The greater the chance the transaction will be undone, the less money parties may be willing to pay for the debtor's securities or assets—a knock-on effect with the potential to endanger the viability to the debtor's reorganization."⁶

It has been accepted as a concept in virtually every circuit in the United States⁷, yet all the while the very courts that have implemented this concept have cautioned against its widespread use. *See e.g., In re One2One Communications, LLC*, 805 F.3d 428, 438 (3rd Cir. 2015) ("[T]he time has come to reconsider whether [equitable mootness] should exist at all . . . .") (Krause, J., concurring). Somewhat like "he who shall not be named," the Seventh Circuit even strongly discourages the use of the term. *Matter of UNR Industries, Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) ("There is a big difference between the inability to alter the outcome (real mootness) and unwillingness to alter the outcome (equitable mootness) . . . Accordingly, we banish equitable mootness from the (local) lexicon.").

---

⁵ Christopher W. Frost, *Pragmatism vs. Principle: Bankruptcy Appeals and Equitable Mootness*, 15 N.Y.U. J.L. & Bus. 477 (2019).
⁶ K. Lewis and S. Mattingly, *Recounting the History and Purpose of the Doctrine of Equitable Mootness and Exploring Its Evolving Persona*, 2020 Ann. Surv. of Bankr. Law 8.
⁷ *Id.*

10

Regardless of whether it is viewed with favor or disfavor, it has not been found to be inapplicable in the Fifth Circuit. In this Circuit, to establish equitable mootness, a debtor must show: 1) the plan of reorganization has not been stayed; 2) the plan has not been substantially consummated; and 3) the relief requested by the Appellant would either affect the rights of parties not before the Court or the success of Plan. *In re Tex. Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 327 (5th Cir. 2013). It is a concept that is looked at with great scrutiny, especially when it involves appeals concerning the rights of secured creditors. *In re Pacific Lumber Co.*, 584 F.3d at 243. In fact, the Fifth Circuit has written that courts in this area should wield it as a "scalpel rather than an axe." *In re Sneed Shipbuilding, Inc.*, 916 F.3d 405, 409 (5th Cir. 2019). "[E]quity strongly supports appellate review of issues consequential to the integrity and transparency of the Chapter 11 process." *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008).

Thus, while the Fifth Circuit (and other courts in this circuit) strongly suggests that the concept be used sparingly—especially in Chapter 11 cases dealing with the rights of secured creditors—the concept remains a concern for appellants in bankruptcy appeals.[8]

The question at this stage, however, is not whether the doctrine of equitable mootness applies here, but whether the possibility of the application of equitable mootness demonstrates irreparable injury. Many district courts in this circuit have held that it does not.[9] Judge Rodriguez succinctly summarized the primary reason why:

> Consummation of the [sale] would likely moot the appeal, but that cannot alone entitle [Appellant] to a stay [pending appeal] because that would mean that anytime an appeal is mooted, a stay would be required.

---

[8] While the Appellants have offered this Court nothing more than a sincere worry that their appellate claims could be extinguished, it is important to note that the Appellees have not waived their right to claim mootness. That being the case, it is safe to assume that Appellees are not contending the concept does not exist.

[9] The Court notes that some bankruptcy courts have taken the opposite approach. *In re Herrera*, 2010 WL 148182, *3 (Bankr. W.D. Tex. Jan. 8, 2010); *In re Westwood Plaza Apartments, Ltd.*, 150 B.R. 163, 169 (Bankr. E.D. Tex. 1993); *In re ATP Oil & Gas* (Bankr. S.D. Tex. June 27, 2013), ECF No. 2139.

11

*In re Camp Arrowhead*, 2010 WL 363773, *7 (W.D. Tex. Jan. 22, 2010); *see also Yucaipa Corp. Initiatives Fund, ILP v. Piccadilly Restaurants, LLC*, 2014 WL 1871889 (W.D. La. May 6, 2014).

Regardless of what one thinks of the continued viability of equitable mootness, the Appellants maintain that it has no application here because "the Court can fashion appellate relief that would not require unwinding the Plan." (Doc. No. 3 at 20). If that is true, there can be no irreparable harm. The irreparable injury must be more than a theoretical possibility. *Nken v. Holder*, 556 U.S. 418, 434 (2009). It must be likely. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Appellants have not satisfied this standard.

As a fallback argument, Appellants point to the value of the lost opportunity given to the Majority Lenders and the fact that they are being denied this equity opportunity. However, if these opportunities truly are valuable, that form of damage/injury can be satisfied by an award of money damages. An injury is not irreparable if it can be fixed by a monetary award. *Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985); *Heil Trailer Intern. Co. v. Kula*, 542 Fed. Appx. 329 (5th Cir. 2013).

As such, this Court does not find that the movants have demonstrated they will suffer irreparable injury. A general concern is not by itself sufficient.[10]

### C. Absence of Substantial Harm to Other Parties

As noted above, this Court has found that the Appellants' lost opportunity injuries can be remedied by money damages. They do not stand to lose additional funds in this regard as they

---

[10] In the portion of their brief addressing the balance of harms, Appellants further suggest that any harm can be resolved merely by "modifying the plan" in a way requiring "a shift of only 11% of the reorganized Debtors' equity, equating to approximately $22 million, with no impact on the Debtors' overall restructuring." (Doc. No 3 at 22). This shift, whether from the Debtors' interest or from the Majority Lenders' interest, like the portion of their brief quoted earlier, is virtually a concession that there is no irreparable injury. Importantly, there has been no reason voiced as to why this modification is impossible to do post-appeal.

did not commit additional sums. The Minority Lenders suggest a reallocation would not cause extensive harm to either the Debtors or to the Majority Lenders. The Debtors argue that, hypothetically, this may be true, but they (nor the courts for that matter) have a means to compel this reallocation.

The Court finds this factor to not weigh toward either the Appellants or the Appellees.

### D. Public Interest

Debtors always seem to argue that a confirmed reorganization (*i.e.*, finality) is in the best interests of the public. This is essentially a truism and at some level such an argument carries little weight. The Debtors and the Majority Lenders both make that argument here.

The Appellants argue that their right to "equal treatment" is in the public's best interests. This at some level is also a truism. It is always in the best interests of the public to have all parties comply with the law and to have the law properly enforced and equally applied.

As with the "balance of harm" element, the Court finds this element does not favor either side. Neither side has argued (and none have certainly given this Court any evidence) of any aspect of public interest that is specific and tangible. Consequently, this Court finds that this element favors neither side.

### IV. Conclusion

This Court hereby denies Appellants' Emergency Motion to Stay. (Doc. No. 3). The Court finds that Appellants have not prevailed on their burden to demonstrate a likelihood of success on the merits. It also finds that the Appellants have not shown that they will suffer irreparable injury. They virtually concede this point in two parts of their motion. The Court finds the "balance of harm" and "public interest" factors to be non-factors in this case. In light of the

findings on the factors of likelihood of success and irreparable injury, Appellants' motion is denied. The motion is therefore denied for procedural and substantive reasons.

The Motion to Certify on an interlocutory basis is also denied as the issues in this case, while important, can be resolved by the Fifth Circuit in the normal course of business.

SIGNED this 25th day of June 2024.

_____
Andrew S. Hanen
United States District Judge