Case No. 24-cv-02001 (ASH)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

In re: CONVERGEONE HOLDINGS, INC., *ET AL.*,
Reorganized Debtors.

AD HOC GROUP OF EXCLUDED LENDERS,
*Appellant,*

v.

CONVERGEONE HOLDINGS, INC., *ET AL.*,
*Appellees.*

Appeal from the United States Bankruptcy Court for the
Southern District of Texas, Houston Division (Case No. 24-90194 (CML))

## MOTION OF APPELLEES CONVERGEONE HOLDINGS, INC., *ET AL.* TO DISMISS APPEAL AS EQUITABLY MOOT

**WHITE & CASE LLP**
Bojan Guzina (admitted *pro hac vice*)
Andrew F. O'Neill (admitted *pro hac vice*)
Erin R. Rosenberg (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
Adam T. Swingle (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
Email: bojan.guzina@whitecase.com
       aoneill@whitecase.com
       erin.rosenberg@whitecase.com
       adam.swingle@whitecase.com
       blair.warner@whitecase.com

**WHITE & CASE LLP**
Charles R. Koster
609 Main Street, Suite 2900
Houston, TX 77002
Telephone: (713) 496-9700
Email: ckoster@whitecase.com

*Counsel to the Reorganized Debtors*

# TABLE OF CONTENTS

|  | Page(s) |
|---|---|
| TABLE OF CONTENTS | II |
| TABLE OF AUTHORITIES | III |
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
|     A. The Reorganized Debtors' Chapter 11 Case and Plan of Reorganization | 2 |
|     B. The Bankruptcy Court's Confirmation of the Plan and Appellants' Unsuccessful Request for a Stay | 3 |
| LEGAL STANDARD | 4 |
| ARGUMENT | 5 |
|     I. The Minority AHG's Failure to Obtain a Stay Favors Dismissal | 5 |
|     II. The Plan is Substantially Consummated | 6 |
|     III. The Minority AHG's Requested Relief Would Unwind the Reorganized Debtors' Plan and Harm Third Parties | 9 |
|         A. The Minority AHG's Requested Relief Requires Unwinding the Plan and Reversing Consummated Transactions | 9 |
|         B. The Reorganized Debtors and Third Parties Have Relied on the Plan and Would Be Harmed By Reversal of Plan Confirmation | 11 |
| CONCLUSION | 12 |
| CERTIFICATE OF SERVICE | 14 |
| CERTIFICATE OF COMPLIANCE | 14 |
| CERTIFICATE OF CONFERENCE | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*,
 782 F. App'x 339 (5th Cir. 2019) ............................................................. 8, 9, 10

*Manges v. Seattle-First Nat'l Bank (In re Manges)*,
 29 F.3d 1034 (5th Cir. 1994) ............................................................................ passim

*Nationwide Mut. Ins. Co. v. Berryman Prods. (In re Berryman Prods.)*,
 159 F.3d 941 (5th Cir. 1998) ........................................................................... passim

*Premier Entm't Biloxi LLC v. Pac. Inv. Mgmt. Co. LLC (In re Premier Entm't Biloxi LLC)*,
 No. 08-60349, 2009 U.S. App. LEXIS 12672 (5th Cir. June 9, 2009) .......... 6, 10

*United States ex rel. FCC v. GWI PCS 1, Inc. (In re GWI PCS 1, Inc.)*,
 230 F.3d 788 (5th Cir. 2000) ................................................................................. 6

**STATUTES AND OTHER AUTHORITIES**

11 U.S.C. § 1101(2) ............................................................................................... 7

11 U.S.C. § 1101(2)(A) .......................................................................................... 8

11 U.S.C. § 1101(2)(B) .......................................................................................... 8

11 U.S.C. § 1101(2)(C) .......................................................................................... 9

11 U.S.C. § 1123(a)(4) ......................................................................................... 10

Fed. R. Bankr. P. 8007 ........................................................................................ 4, 5

Appellees ConvergeOne Holdings, Inc. and its affiliated debtors (the "**Reorganized Debtors**" or "**C1**") submit this Motion to Dismiss the appeal filed by Appellants, the self-described "ad hoc group of excluded lenders" (the "**Minority AHG**"), and respectfully state as follows.

## PRELIMINARY STATEMENT

The Minority AHG's appeal seeks relief that is no longer available. After months of negotiation between the Reorganized Debtors and their creditors—and a fulsome litigation initiated by the Minority AHG—the bankruptcy court confirmed the Reorganized Debtors' plan of reorganization (the "**Plan**"). The Minority AHG vigorously opposed confirmation of the Plan, but did not ask the bankruptcy court to stay its confirmation order. The Minority AHG's procedurally improper request that *this* Court stay confirmation failed, and the Plan is now substantially consummated. Hundreds of millions of dollars in cash and equity have been distributed to third parties and the Reorganized Debtors' global business has been reorganized. Undoing those transactions would seriously harm C1 and its stakeholders, including shareholders, customers, vendors, and lenders. The Court cannot un-ring the bell by unwinding the Plan and should therefore dismiss the Minority AHG's appeal as equitably moot.

# BACKGROUND[1]

### A. The Reorganized Debtors' Chapter 11 Case and Plan of Reorganization

The Reorganized Debtors filed their chapter 11 cases after reaching agreement with the holders of more than 80% in amount of their first and second lien debt on the terms of a balance sheet restructuring. App. 003.[2] The parties' agreement was set forth in a restructuring support agreement between the Reorganized Debtors and participating creditors that outlined the terms of a "prepackaged" chapter 11 plan. App. 357-484. Although the overwhelming creditor support for the Plan meant that the Reorganized Debtors had the support necessary to confirm the Plan immediately, they nevertheless requested a modest confirmation schedule to give creditors ample time to review the transaction, submit alternative proposals, vote on the Plan, and object to confirmation of the Plan.

Approximately two weeks after the Reorganized Debtors commenced the chapter 11 cases, the Minority AHG appeared in the cases and, on April 26, delivered

---

[1] Appellees include an abbreviated background here. A comprehensive factual background is set forth in the Answer Brief of Appellees ConvergeOne Holdings Inc., *et al. See* ECF No. 33.

[2] References to "App. #" are to the appendix filed with Appellant's initial brief. References to "R. #" are to the Record on appeal, found at ECF No. 29. References to "S.A. #" are to the Addendum to Brief and Motion to Dismiss for the Reorganized Debtors.

an alternative restructuring proposal. App. 762. The Reorganized Debtors, through their special committee comprised of independent directors, considered the proposal and rejected it because it lacked committed financing and did not offer a higher or better recovery to creditors (R. 010235-37 (Bankr. ECF No. 411 at 76:8-78:20)). The special committee also rejected a second alternative proposal from the Minority AHG because its proposed financing mechanism was insufficient to cover the cost of extending the chapter 11 cases, and because the alternative proposal lacked stakeholder support and therefore was not actionable (R. 010365-66 (Bankr. ECF No. 416 at 43:4-44:14)).

The Minority AHG filed the sole objection to confirmation of the Plan. R. 001594 (Bankr. ECF No. 266).

### B. The Bankruptcy Court's Confirmation of the Plan and Appellants' Unsuccessful Request for a Stay

The bankruptcy court held a confirmation hearing. App. 986. Following two days of testimony and argument, the bankruptcy court confirmed the Plan and overruled the Minority AHG's objection. App. 1172. The bankruptcy court entered the Plan confirmation order on the same day, and it became immediately effective and enforceable based on the bankruptcy court's waiver of the automatic 14-day stay applicable to plan confirmation orders.

The Minority AHG waited five days from the confirmation order's entry before seeking a stay pending appeal in this Court. *See* ECF No. 3. It never sought a stay in the bankruptcy court. On June 25, 2024, the Court denied the Minority AHG's stay request because (1) its failure to seek a stay from the bankruptcy court first violated Bankruptcy Rule 8007; (2) the Minority AHG was not likely to succeed on the merits; and (3) the Minority AHG could not show it would suffer irreparable harm if a stay were not granted. *See* ECF No. 28.

The Minority AHG submitted its initial brief on appeal on August 2, 2024. *See* ECF No. 30.

## **LEGAL STANDARD**

Equitable mootness is "a recognition by the appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions." *Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034, 1039 (5th Cir. 1994). To "determine whether it is prudent to upset the plan of reorganization at this late date," the Fifth Circuit "has historically examined three factors . . . (i) whether a stay has been obtained, (ii) whether the plan has been substantially consummated, and (iii) whether the relief requested would affect either

the rights of parties not before the court or the success of the plan." *Id*. (cleaned up; citations omitted).

## ARGUMENT

All three equitable mootness factors weigh in favor of dismissal. *First*, the Minority AHG failed to obtain a stay of confirmation—and, indeed, did not even properly request one from the bankruptcy court. *Second*, substantial consummation of the Plan occurred weeks ago, and substantially all Plan distributions have been made. *Third*, granting the relief the Minority AHG seeks would not only upend the Plan, it would also eviscerate the rights of third parties and destroy millions of dollars in value, leaving both C1 and its creditors worse off.

## I. The Minority AHG's Failure to Obtain a Stay Favors Dismissal

The Fifth Circuit has recognized that "in many situations, the reviewing court's decision whether to grant a stay is essentially dispositive of the case," because the length of time to resolve an appeal precludes unwinding a plan. *In re Manges*, 29 F.3d at 1040. Here, the Minority AHG's failure to obtain a stay is undisputed. *See* ECF No. 28. And as this Court noted, the Minority AHG was not diligent in seeking a stay—not only did it fail to request one from the bankruptcy court (as required by Rule 8007), but it also waited five days after confirmation to seek a stay at all. *See id*. at 4-5. The Minority AHG's failure to obtain a stay (and to diligently pursue a stay) weigh in favor of dismissal. *See Nationwide Mut. Ins.*

5

*Co. v. Berryman Prods. (In re Berryman Prods.)*, 159 F.3d 941, 945 (5th Cir. 1998) (holding that first factor favored dismissal "even though Nationwide sought a stay—pursued with a marked lack of diligence").[3]

## II. The Plan is Substantially Consummated

The second equitable mootness factor "informs [the Court's] judgment as to when finality concerns and the reliance interests of third parties upon the Plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *United States ex rel. FCC v. GWI PCS 1, Inc. (In re GWI PCS 1, Inc.)*, 230 F.3d 788, 801 (5th Cir. 2000). A plan is "substantially consummated" after:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distributions under the plan.

*Id*. (quoting 11 U.S.C. § 1101(2)). The standard does not require "absolute or complete consummation." *Id*.

---

[3] Even if the Minority AHG had been diligent in seeking a stay, "the first equitable-mootness factor concerns whether a stay was granted; a stay 'diligently—albeit unsuccessfully—pursued' is insufficient." *Premier Entm't Biloxi LLC v. Pac. Inv. Mgmt. Co. LLC (In re Premier Entm't Biloxi LLC)*, No. 08-60349, 2009 U.S. App. LEXIS 12672, at *7 (5th Cir. June 9, 2009) (reproduced at S.A. 453-458) (quoting *In re Manges*, 29 F.3d at 1040).

As explained in the declaration of Stephen Spitzer (C1's interim CFO), the Reorganized Debtors substantially consummated their Plan of reorganization on June 4, 2024. *See* Declaration of Stephen A. Spitzer, attached as **Exhibit 1** ¶ 5.[4] As shown below, each of the three elements in 11 U.S.C. § 1101(2) was satisfied.

The Plan provided for the elimination of $1.6 billion in debt and the opportunity for C1's first-lien lenders to purchase $245 million in new equity. Ex. 1 ¶ 4. On June 4, 2024, all of the property proposed to be transferred under the Plan was transferred, including, among other things:

- C1's receipt of $73 million in cash proceeds from the equity rights offering, which was funded by hundreds of individual lenders;

- C1's payment of $67.3 million in principal, interest, and fees owed under its postpetition term loans; $10.2 million in other administrative expenses due and owing on the Effective Date; and $8.1 million in principal and interest due under an asset-based revolving credit facility;

- C1's borrowing of $242.8 million in takeback first lien term loans from 215 individual lenders;

- C1's distribution of 20 million shares of new equity to 206 shareholders;

- C1's payment of approximately $255 million in general unsecured claims to 600 parties;

- C1's payment of approximately $5.2 million in cure payments; and

---

[4] The Court "may review evidence as to subsequent events not before the courts below which bears upon the issue of mootness." *In re Manges*, 29 F.3d at 1041.

7

- C1's payment of $10.1 million to a professional fee escrow account, of which $8.6 million has subsequently been distributed to professionals.

Ex. 1 ¶ 5. These transfers of property satisfy the first element of substantial consummation. *See* 11 U.S.C. § 1101(2)(A); *see also Nationwide Mut. Ins. Co. v. Berryman Prods. (In re Berryman Prods.)*, 159 F.3d 941, 945 n.16 (5th Cir. 1998) (affirming finding that "substantial consummation had occurred based on 150 distributions to trade creditors totaling $337,000").

The second element is also satisfied. Since June 4, 2024, C1 has freely operated its business, including transacting with thousands of customers, vendors, employees, lenders, shareholders, advisors and other third parties. Ex 1 ¶ 6. C1 has also secured $204 million in new projects with customers who previously were hesitant to do business with C1 while it remained in chapter 11, including several public-sector customers that are integral to C1's business plan. Ex. 1 ¶ 7. It has hired 66 new employees—individuals who may not have joined C1 if it remained a debtor. And C1's new equity has started trading, with certain of the rights offering backstop parties acquiring additional equity holdings in C1 from their fellow shareholders. These extensive business activities outside of bankruptcy demonstrate substantial consummation of C1's Plan. *See* 11 U.S.C. § 1101(2)(B); *see also Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, 782 F. App'x 339, 340 (5th Cir. 2019) (affirming dismissal of appeal as "equitably moot because of significant post-

confirmation transactions made" that "included assumption of executory contracts with third parties; obtaining loans relating to exit from bankruptcy; payment of creditors pursuant to the Plan; and entering into numerous contracts with third parties relating to conducting its business").

Finally, distributions have not only commenced, but have largely been completed. That includes distributions of new equity to shareholders, distributions of cash to lenders, and payments to unsecured creditors. *See* Ex. 1 ¶¶ 5-8. The third substantial consummation element is thus satisfied. 11 U.S.C. § 1101(2)(C).

Because the Reorganized Debtors' Plan has been substantially consummated, the second equitable mootness factor weighs in favor of dismissal. *See In re Thru, Inc.*, 782 F. App'x at 341 ("In short, reversal would require third-party creditors to return distributions already paid, and upset the expectation and reliance interests of third-party customers, vendors, and partners in good faith who entered into post-confirmation transactions with [the Reorganized Debtors].").

### III. The Minority AHG's Requested Relief Would Unwind the Reorganized Debtors' Plan and Harm Third Parties

#### A. The Minority AHG's Requested Relief Requires Unwinding the Plan and Reversing Consummated Transactions

The Minority AHG previously argued that "the Court can fashion appellate relief that would not require unwinding the Plan." ECF No. 28 at 20. But its initial brief makes clear that the Minority AHG does not seek monetary damages or a mere

9

modification to the Plan; rather, it asks the Court to "reverse the Confirmation Order." Br. at 28.[5] Reversal of plan confirmation "means exactly that—placing the parties in the status quo pre-confirmation," which necessarily entails "[u]nraveling" the plan entirely. *In re Berryman Prods.*, 159 F.3d at 946. The crux of the Minority AHG's argument is that the Plan violates section 1123(a)(4) of the Bankruptcy Code because it discriminates among similarly situated creditors. *See* Br. 12-19. The Minority AHG's only solution is for the Court to unwind the Plan and invalidate the backstop agreement that makes it work. *See id.* at 19. "When there is no remedy for an alleged unfairly discriminatory plan other than to unwind it, it is appropriate to decline review." *In re Thru, Inc.*, 782 F. App'x at 341 n.4.

As explained above, hundreds of millions of dollars in transactions—including payments to creditors, sales of new equity, new loan undertakings, and new contracts with customers—have already occurred, and would have to be reversed to reinstate the status quo. Ex. 1 ¶¶ 5-8. Reversal of Plan confirmation would also undo the discharge of more than $1 billion in debt and void the financing commitments that are necessary for C1's ongoing operations. Ex. 1 ¶¶ 4, 11. That justifies dismissal. *See, e.g.*, *In re Berryman Prods.*, 159 F.3d at 946 (dismissing

---

[5] Even if the Minority AHG sought only monetary damages, rather than reversal of Plan confirmation, it cannot avoid equitable mootness. *See Premier Entm't*, 2009 U.S. App. LEXIS 12672, at *12 (dismissing appeal as equitably moot even though "the relief sought is purely monetary").

appeal where reversal of plan payments "would frustrate creditor relations and the emergence of the Debtor as a viable going concern in the economy").

**B.      The Reorganized Debtors and Third Parties Have Relied on the Plan and Would Be Harmed By Reversal of Plan Confirmation**

The Plan is a single integrated transaction, and unwinding any part of it would unwind the entire restructuring. *See* Ex. 1 ¶ 10. The terms of the Plan, including its equity rights offering, were essential to garnering the support of the holders of more than 80% of C1's first and second lien debt. *See id*. C1 has no assurance that creditors who supported its Plan will vote for a new plan, and without those votes C1 would be unable to successfully reorganize. *See id*. Reversal of confirmation and unwinding of consummated transactions would thus "affect the success of the plan" by destroying creditor support for it. *In re Manges*, 29 F.3d at 1039 ("In short, we doubt seriously that we could place the estate or the parties back into the status quo as it existed before the confirmation order if we were to unravel the Plan at this time.").

Reversal of confirmation would also directly harm third parties. For example, general unsecured creditors obtained a full recovery under the Plan. *See* Ex. 1 ¶ 11. Reversal of confirmation could require C1 to claw back millions of dollars in transfers to those general unsecured creditors. *See id*. Since their recovery was only possible with the consent of the first and second lien lenders, there is no guarantee

that general unsecured creditors would recovery *anything* under a new plan. *See id*. Secured creditors would also be harmed by the clawback of the new equity they purchased, some of which has since been resold to other parties. *See* Ex. 1 ¶ 7. And the contractual rights of vendors and customers who have signed new agreements with C1 would be harmed if C1 were forced back into chapter 11 proceedings. *See* Ex. 1 ¶ 6.

Finally, if the Plan is reversed, C1 would likely have to seek additional financing to bolster its liquidity and manage the significant administrative expenses associated with complex chapter 11 cases. *See* Ex. 1 ¶ 11. Any such financing would likely dilute recoveries on the takeback first lien term loans that were just borrowed under the Plan—impairing those creditors' recoveries mere months after C1's emergence from bankruptcy. *See* Ex. 1 ¶ 11. Since such an "irretrievable depletion of estate assets would correspondingly decrease the amounts available to all claimants," this factor also weighs in favor of mootness. *In re Manges*, 29 F.3d at 1043.

## **CONCLUSION**

For these reasons, the Reorganized Debtors request that the Court dismiss this appeal as equitably moot.

Dated: September 3, 2024
       Houston, Texas

**WHITE & CASE LLP**

*/s/ Charles R. Koster*
Charles R. Koster (Bar No. 24128278)
**WHITE & CASE LLP**
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com

**Attorney-In-Charge for the Reorganized Debtors**

Of Counsel:

Bojan Guzina (*pro hac vice*)
Andrew F. O'Neill (*pro hac vice*)
Erin R. Rosenberg (*pro hac vice*)
Blair M. Warner (*pro hac vice*)
Adam T. Swingle (*pro hac vice*)
**WHITE & CASE LLP**
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
Email:
    bojan.guzina@whitecase.com
    aoneill@whitecase.com
    erin.rosenberg@whitecase.com
    blair.warner@whitecase.com
    adam.swingle@whitecase.com

*Counsel to the Reorganized Debtors*

## Certificate of Service

I certify that on September 3, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

/s/ *Charles R. Koster*
Charles R. Koster

## Certificate of Compliance

This document complies with the typeface requirements of Bankruptcy Rule 8013(f)(1) and Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it is written in 14-point Times New Roman Font. This document complies with the word limit of Bankruptcy Rule 8013(f)(3) because, excluding the documents exempted by Bankruptcy Rule 8013(a)(2)(C), it contains 2,752 words.

/s/ *Charles R. Koster*
Charles R. Koster

## Certificate of Conference

The undersigned hereby certifies that counsel for the Reorganized Debtors contacted counsel for Appellant regarding its position on the motion. Counsel for Appellant has not provided its position on the disposition of this motion.

/s/ *Charles R. Koster*
Charles R. Koster